<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SAMUEL SANTIAGO-GOMEZ, | : | **Faith S. Hochberg** |
| Petitioner, | : | Civil No. 05-2899 (FSH) |
| v. | : | <u>OPINION</u> |
| MICHAEL CHERTOFF, et al., | : |  |
| Respondents. | : |  |

**APPEARANCES**:

    SAMUEL SANTIAGO-GOMEZ, #104639, A78 829 806
    Middlesex County Adult Correctional Center
    P.O. Box 266
    New Brunswick, New Jersey  08903
    Petitioner <u>Pro</u> <u>Se</u>

    PETER G. O'MALLEY, ASSISTANT U.S. ATTORNEY
    CHRISTOPHER J. CHRISTIE, U.S. ATTORNEY
    970 Broad Street, Suite 700
    Newark, New Jersey  07102
    Attorneys for Respondents

<u>HOCHBERG</u>, District Judge

    Samuel Santiago-Gomez filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 on June 6, 2005, challenging his detention by the Department of Homeland Security ("DHS") at Middlesex County Adult Correctional Center in New Jersey.[1]  Petitioner asserts that

---

[1] The Homeland Security Act of 2002, 6 U.S.C. §§ 101-557, P.L. 107-296, 116 Stat. 2135 (Nov. 25, 2002), created the Bureau of Citizenship and Immigration Services ("BCIS") within the Department of Homeland Security.  6 U.S.C. § 271(a).  The Act transferred the functions of the Commissioner of the Immigration and Naturalization Service ("INS") to the Director of
    (continued...)

he is being held in custody in violation of 8 U.S.C. § 1231(a)(6), see Clark v. Martinez, 125 S.Ct. (2005); Zadvydas v. Davis, 533 U.S. 678 (2001), and the Due Process Clause of the Fifth Amendment because his removal is not reasonably foreseeable and he "has cooperated fully with all efforts . . . to remove him from the United States." (Pet. ¶ 13.) The Court ordered the government to file and serve an answer and certified copies of all documents relating to Petitioner's claim. On September 15, 2005, the government filed an Answer and Request to Dismiss the Petition, accompanied by the declaration of counsel and uncertified copies of various documents. Relying on 8 U.S.C. § 1231(a)(1)(C), the government argues that the Petition should be dismissed because "the record before the agency shows that he has refused to provide accurate information or documents need[ed] to complete his application for a travel document and is thereby failing to cooperate with his removal." (Answer at p.4.) Having thoroughly examined the papers and considered the arguments of the parties, this Court dismisses the Petition without prejudice.

## I.  BACKGROUND

Petitioner contends that his detention is not statutorily authorized and deprives him of a liberty interest in violation of the Fifth Amendment of the United States Constitution. See Zadvydas, 533 U.S. at 700-701. The DHS counters that, because Petitioner has not sufficiently cooperated in the process of securing the necessary travel documents from Spain, he is not entitled to release.

---

[1](...continued)
BCIS, 6 U.S.C. § 271(b), and abolished INS, 6 U.S.C. § 291. Accordingly, DHS replaced INS on March 1, 2003.

The Petition sets forth the following facts. Petitioner alleges that he is a native and citizen of Spain who entered the United States in 1984, without being legally admitted and without a passport or birth certificate. He asserts that he has remained here in an unlawful status since that time. He alleges that in 2001, he was convicted in the New Jersey courts of a narcotics offense and sentenced to a term of imprisonment. He states that immigration officials took him into custody on January 21, 2004, upon his release from state custody. According to the Petition, on February 9, 2004, Petitioner appeared before an Immigration Judge, who ordered his removal to Spain. Petitioner waived his right to appeal.

Petitioner insists that he has cooperated in the efforts to remove him by applying for a Spanish passport, providing accurate biographical information, photographs and fingerprints to DHS officials, writing to and speaking with the Spanish Consul, and writing to numerous other governments seeking admission. Petitioner contends that, at this point, he faces indefinite detention because his removal is not reasonably foreseeable.

The government filed an "Answer to Petition for Writ of Habeas Corpus and Request to Dismiss the Petition," accompanied by the declaration of counsel and uncertified exhibits obtained from DHS files. (Decl. of Counsel ¶¶ 2, 3.) Counsel indicates that the United States Attorney's Office has not received the certified administrative record. (Id.) The documents attached to counsel's declaration provide the following information. Petitioner came to the attention of immigration officials on or about September 18, 2000, as a result of his arrest by New Jersey authorities at his residence in Long Branch, New Jersey, for sale of cocaine to undercover DEA agents. (Personal History Report, prepared Sept. 18, 2000, attached as Ex. A to Decl. of Counsel.) The Personal History Report lists Petitioner's date of birth as January 2,

1969, and place of birth as Malaga, Andalucia, Spain.  This Personal History Report does not appear to have been signed by Petitioner.

Attached as Exhibit B is INS Form I-217, entitled "Information for Travel Document of [illegible]."  (Ex. B. to Decl. of Counsel.)  This document, which is dated October 24, 2001, concerns "Samuel Santiago-Gomez;" sets forth the same date and place of birth as the previous document; states the names of the alien's parents as "Rafael Santiago Gomez" and "Maria Lopez Gomez," both from Malaga; provides the name of a relative in Spain (uncle); and indicates that the alien attended college from 1990 to 1991.  Attached to this document is a facsimile cover sheet indicating that Deportation Officer Raquel Martinez forwarded the document to the American Embassy in Spain on June 17, 2004.  (Ex. B to Decl. of Counsel.)  In the cover sheet, Raquel Martinez states that she has "contacted the Consular General Office of Spain in New York [and] they require that I provide a birth certificate for them to issue a travel document (passport).  To-date the subject will not provide his birth certificate."  (Id.)

Exhibit C appears to be an email thread, dated in July and August 2004, between Raquel P. Martinez and Ted D'Alessio.[2]  D'Alessio states that he received "a call from the consular officer in Malaga, who [said] that the Civil Registry had no record of the birth of SANTIAGO in Malaga.  They said he may have been born in the province, but not the city.  If he was born in some other city in the Province, we will have to find out which one in order to try to get a record . . ."  (Ex. C. to Decl. of counsel.)  Raquel P. Martinez responds on August 5, 2004:  "I spoke to the subject today and informed him of that there were no records found in Malaga.  He advised

---

[2] Neither the email itself nor the declaration of counsel identifies Ted D'Alessio by title or office.

me that he was in fact born in Torremolinos, his parents were born in Malaga. The subject was not fully complying by providing information but now he is somewhat. Any assistance would be greatly appreciated. Thank you." (Id.) On August 6, 2004, Ted D'Alessio states that he "sent another message to the Consular Agent in Malaga, requesting that she try again with the new information . . ." (Id.) The record contains no reply.

Exhibit D is a "Post Order Custody Review Worksheet," signed by Ms. Martinez on August 19, 2004. According to the Worksheet, Ms. Martinez reviewed Petitioner's custody status on August 19, 2004, without interviewing Petitioner. On page four, the form includes a section for the official to describe Petitioner's efforts to obtain travel documents and/or prevent his removal. Specifically, the form provides:

> **List aliens attempts to get travel documents and status (to include any actions alien has taken to *prevent* removal, and date of service of I-229(a) and Instruction Sheet to Detainee):**
>
> 02/25/2004: formal request for a travel document sent to the Consulate of Spain using only biographic information provided by alien.
>
> 08/05/2004: I-229(a) served on alien.
>
> 08/04/2004: the Consulate General of Spain interviewed the subject via telephone.

(Ex. D to Decl. of Counsel, p. 4.)

The worksheet indicates that, although DHS officials telephoned the Consular Officer on several occasions after Petitioner submitted his formal request for travel documents, the Consular Officer, Ms. Cabello, was apparently unwilling to issue a passport without a birth certificate.[3]

---

[3] The notation for February 27, 2004, indicates that "Consular Officer Ms. Cabello . . .
(continued...)

Ms. Martinez ultimately recommends Petitioner's continued detention.  Specifically, Ms. Martinez' recommends the following:

> Based on the subject's refusal to provide documentary evidence or accurate biographical information, it is the recommendation of this Officer that the subject remain in ICE custody until his removal order is executed.  The subject's lack of cooperation has prevented ICE from having 90 unimpeded days in which to effect his removal.  The removal period is should continue at this time due to the subject's noncompliance.

(Id. at p. 6.)

Exhibit G is a memorandum dated October 27, 2004, from Deportation Officer Mechkowski to Mr. Andres Otero, Chief Inspector, Spain National Police, and Exhibit H is Mr. Otero's reply dated November 18, 2004.  (Exhibits G, H to Decl. of Counsel.)  The memorandum contains an inaccurate birth date for Petitioner (January 20, 1969, instead of January 2, 1969) and incorrectly identifies his parents.  Specifically, it provides:

> The subject claims to be born 01/20/1969 in Malaga, Spain.  The subject also claims that he is a Citizen and National of Spain.  Our records are based on information received through interviews with the subject.  The subject stated that he attended and graduated from "Sprint High School" in 1984, in Malaga, Spain.  The subject last known address in Spain is Calle Granada #575 Malaga, Spain.  The subject claims his parents were born in Malaga Spain and their names are: Manuel Santiago DOB - Unknown, Maria Gomez DOB - Unknown.

---

[3](...continued)
advised that she needed more identification documents in order to issue a travel document."  (Ex. D to Decl. of Counsel, p. 4.)  The notation dated August 4, 2004, indicates that the Consulate of Spain interviewed Petitioner, and that Mrs. Cabello "later relayed that she will not issue a travel document until a birth certificate or a passport is produced.  She stated that the subject does not have a Spanish accent and that he must provide proof of identity."  (Id.)  The notation dated August 10, 2004, indicates that the consulate "will need more information on the subject's family in Spain to conduct a search of records."  (Id.)

(Ex. G to Decl. of Counsel.)  The Chief Inspector sends the following response on November 18, 2004: "Concerning the captioned matter, I would like to inform you that after a thorough check on Spanish databases, Samuel Santiago-Gomez, a.k.a. Samuel Guerrar, claiming to be born on 01/20/69 in Malaga (Spain), has showed negative results in every search performed.  Thank you for your cooperation."  (Ex. H to Decl. of Counsel.)

The remaining documents are copies Form I-229(a), entitled "Warning for Failure to Depart," and "INSTRUCTION SHEET TO DETAINEE REGARDING REQUIREMENT TO ASSIST IN REMOVAL."  The instruction sheet provides no individualized instructions but generally directs the alien to submit a copy of passport, apply for a travel document/passport from embassy, comply with all instructions from all embassies or consulates, submit a birth certificate or other proof of citizenship, provide names of family/friends in the United States and in native country who can contact the government, embassy or consulate to facilitate issuance of a travel document, provide copies of requests to embassies or consulates requesting issuance of a travel document, provide copies of responses from embassies or consulates, and solicit permission from another country to enter that country.

In his Reply, Petitioner argues that 8 U.S.C. § 1231(a)(1)(C) does not authorize his detention because he made a timely good faith application for a Spanish passport and he has not acted to prevent his removal.  Petitioner admits that he has not produced a passport or birth certificate, but he maintains that he does not have these documents and it is not unusual for an alien like himself, who entered illegally 20 years ago, not to possess documents.  Petitioner states that he did not mislead immigration officials about his place of birth; he insists that he told DO Martinez that he was born in the town of Torremolinos, which is five miles from the city of

Malaga, and that her e-mail to Spain in 2004 documents this information.[4]  Most significantly, Petitioner notes that Respondents' correspondence with Spanish officials regarding Petitioner's nationality mistakenly sets forth his birthday as January 20, 1969, rather than January 2, 1969.  Petitioner insists that, even if this mistake were corrected, his removal would not necessarily be foreseeable because, "according to Spanish citizenship law, birth within territory of Spain does not automatically confer citizenship."  (Petitioner's Reply at p. 6.)  Petitioner argues that his detention is illegal under Zadvydas and Clark.  He asks this Court to grant a Writ of Habeas Corpus releasing him pending removal.

## II.  DISCUSSION

A.  Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied:  (1) the petitioner is "in custody" and (2) the custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989); 1 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 8.1 (4th ed. 2001).  This Court has subject matter jurisdiction over this Petition under § 2241 because Petitioner was detained within its jurisdiction at the time he filed his Petition and he asserts that his detention is not statutorily authorized and violates his constitutional rights.  See Zadvydas, 533 U.S. at 699.

---

[4] Malaga City and Torremolinos are municipalities located within the province of Malaga and the region of Andalucia, Spain.  See http://www.andalucia.com/province/home.htm.

B.  Statutory Authority for Post-Removal-Period Detention

Section 1231(a)(6) of Title 8 of the United States Code authorizes the post-removal-period detention of aliens:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In Zadvydas, the Supreme Court held that § 1231(a)(6) does not authorize the Attorney General to detain aliens indefinitely beyond the removal period, but "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689.  However, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699.

The Supreme Court emphasized that a habeas court should not merely "accept the Government's view about whether the implicit statutory limitation is satisfied in a particular case," as a habeas court has the legal responsibility to independently review the lawfulness of an alien's detention. Zadvydas at 699.  To guide habeas courts, the Court recognized six months as a "presumptively reasonable period" of post-removal-period detention. Id. at 701.  "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period

9

of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

In 2005, the Supreme Court ruled in Clark v. Martinez, 125 S.Ct. at 726, that the post-removal-period detention of two inadmissible aliens from Cuba who had not effected "entry" was no longer statutorily authorized by § 1231(a)(6) because removal to Cuba was not reasonably foreseeable. See Clark v. Martinez, 125 S.Ct. 716, 726 (2005). The aliens "were detained well beyond six months after their removal orders became final," and the government "brought forward nothing to indicate that a substantial likelihood of removal subsists despite the passage of six months." Id. at 727. Under those circumstances, the Court held that the petitions for habeas corpus should have been granted. Id.

In this case, the government does not dispute Petitioner's assertions that he entered the United States in 1984 illegally, he has lived here since that time, and he is not in possession of a birth certificate or a passport. Documents produced by the government establish that Petitioner provided requested biographical information to immigration officials, beginning October 24, 2001. (Ex. B to Decl. of counsel.) The government's documents show that Petitioner was born on January 2, 1969, in Spain to Rafael Santiago Gomez and Maria Lopez Gomez; the nearest large city to Petitioner's place of birth is Malaga; Petitioner's last permanent residence in Spain was no. 575 Calle Granada in Malaga; Petitioner's relative in Spain is Jose Santiago Gomez, his uncle. (Id.) In fact, the form entitled "Information for Travel Document," appears to have been fully completed on October 24, 2001. Moreover, on February 25, 2004, Petitioner made a formal request to the Consulate of Spain for the issuance of a passport, and on August 4, 2004, the

10

Consulate General of Spain interviewed Petitioner regarding the request.  (Post Order Custody Review Worksheet, dated Aug. 19, 2004, at p.4, attached as Ex. D to Decl. of counsel.)

However, the documents provided by DHS show that DHS officials reported inaccurate biographical information to Spanish officials in an effort to verify Petitioner's citizenship.[5] Naturally, since immigration officials provided the wrong birth date and incorrect names of Petitioner's parents, Spanish officials found no record of Petitioner's birth.  It is entirely possible that, with the correct birth date and names, Spanish officials will be able to verify Petitioner's birth and citizenship, and will agree to issue a passport for Petitioner.  Since DHS can correct Petitioner's biographical information and forward the correct information to officials in Spain, Petitioner's detention is not destined to be indefinite.  Under these circumstances, it cannot be found that "there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.  Petitioner's detention is therefore authorized by 8 U.S.C. § 1231(a)(6), and the Court is constrained to dismiss the Petition.  However, the dismissal is without prejudice to the filing of another petition in the event that, after correct data has been transmitted to Spain, there is no significant likelihood of removal in the reasonably foreseeable future.

---

[5] The Answer filed by the government in this Court states that Petitioner was born on January 20, 1969, but Petitioner avers, and the INS form completed in 2001 confirms, that his birth date is January 2, 1969.  It is not surprising that the Embassy of Spain reported on November 18, 2004, that "after a thorough check on Spanish databases, Samuel Santiago-Gomez, a.k.a. Samuel Guerrar, claiming to be born on 01/20/69 in Malaga (Spain), has showed negative results in every search performed."  (Ex. H. to Decl. of Counsel.)  Also, the memorandum sent to the Chief Inspector in Spain incorrectly identifies Petitioner's parents as "Manuel Santiago" and "Maria Gomez."  (Ex. G to Decl. of Counsel.)  The INS form dated October 24, 2001, indicates that their names are "Rafael Santiago Gomez" and "Maria Lopez Gomez."  (Ex. B to Decl. of Counsel.)

## III.  CONCLUSION

For the reasons set forth above, the Court dismisses the Petition without prejudice.


       /s/ Faith S. Hochberg
    **FAITH S. HOCHBERG, U.S.D.J.**


DATED:  March 8, 2006